## *GREENLAND v. WEEKS & a.

When the selectmen of a town, assuming to act as agents, out of town monies in their hands, pay for recruits to be counted on the town quota, larger sums than is authorized by law, and the town afterwards, with a knowledge of the facts, assents to, and ratisfies such payments, accepts the benefits thereof, and states, and assents to, the account of the selectmen embracing the charges for such payments—it was *held*, that the town could not afterwards recover of the selectmen, the excess of such payments, beyond the amounts authorized by law.

THIS is an action of assumpsit, by the town of Greenland against Rufus W. Weeks, Samuel A. Hatch, and J. Bartlett Weeks, for money had and received, commenced March 23, 1867. Plea, the general issue. Plaintiff proved that defendants were selectmen of the town of Greenland from 1863 to 1865, and that they, while acting as selectmen, received certain sums of money for, and on behalf of, the town. The plaintiff then rested. Defendants objected that no cause of action was made out; that, inasmuch as the money was proved to have come into the hands of the selectmen in their official capacity, the burden was on the plaintiffs to show that it had not been accounted for. It being understood and agreed that the introduction of evidence by the defendants (for the purpose of raising questions of law) should not operate as a waiver of the foregoing objection, the following facts were proved. The warrant for a town meeting held in Greenland, June 13, 1864, contained the following article : " To see if the town will vote to authorize the selectmen to procure substitutes, on the credit of the town, for the men recently drafted, and for those who may hereafter be drafted, into the service of the United States from this town." At the town meeting held June 13, 1864, the following vote was passed :

"*Resolved*, That the selectmen be authorized to procure volunteers for all quotas of this town hereafter to be made in season to avoid a draft, and at as low a rate as possible, up to the second Tuesday of March next."

At the annual town meeting in March, 1865, a printed report of the receipts and disbursements of the selectmen for the year ending in March, 1865, was produced and partly distributed. Among other items of expenditure in said report, were the following :

"For 16 recruits to fill town quota (including brokerage), 12,759
For substitutes for 5 men drafted May 17, 1864,"          2,500

At the end of said report was the following certificate signed by the auditors :

---

*This case was decided at the March adjourned term, 1870 and is inserted here, because not furnished in season to be printed with the other opinions of the chief justice, at this (June) term, 1870.

REPORTER.

"We, the subscribers, auditors of the selectmen's accounts the past year, have examined the foregoing, and find them well vouched and correctly cast.                              J. W. PACKER,

Greenland, March 7th, 1865.                     JOHN B. LOUD."

Owing to a disturbance in the town meeting, no action was then taken in town affairs, and the defendants continued in office until April 22d, 1865.   The warrant for a town meeting, held April 22d, 1865, contained the following articles :  "Article 6.    *    *    *    *  Also, to see what action the town will take in relation to the debts contracted by the selectmen for the purpose of procuring recruits to fill the quotas of the town."  "Article 7.  To transact any other business that may legally come before said meeting."  At the town meeting held April 22d, the aforesaid printed report, with the auditors' certificate thereon, was distributed, and a written report, containing the selectmen's accounts from March 7th, to April 22d, was read from the town book.   The following certificate at the foot of said written report, was also read :

"We, the subscribers, auditors of the selectmen's accounts, have examined the foregoing, and find them well vouched and correctly cast.

Greenland, April 22d, 1865.                     JAMES W. PACKER,
                                               JOHN B. LOUD."

At the town meeting, held April 22d, 1865, the following votes were passed :  " Voted, to accept the selectmen's accounts up to present date."   " Voted, that the town assume the town debt, as it now stands."

The selectmen for 1866–7 presented to the commissioners, appointed under chapter 4069 of the Pamphlet Laws, the items embraced in the accounts of the defendants, from 1863 to 1865, as items of the war expenditures of the town, and the same, with the exception of a trifling amount, were allowed by said commissioners.  The foregoing, is a transcript from the report of the auditor in said case, and the questions arising thereon, were ordered by the court to be reserved for the opinion of the whole court.

*Case reserved.*

*Hatch & Frink*, for plaintiff. .

The purpose of this action, is to compel the defendants to account for and pay over moneys of the town, which came into their hands while they were selectmen, and of which they have rendered (1) no account, or (2) no detailed account, or (3) no true account, and which the plaintiff alleges, are still in their hands and ought to be paid over.

I.  The first question presented in the case, is one of the burden of proof.   It was shown to the auditor and admitted, that large sums of money of the town came into the hands of defendants as selectmen, or while they were selectmen.   But defendants say, that the burden

VOL. XLIX.          31

of proof is on the plaintiff, to show that it has not been accounted for. No reason occurs to the plaintiff, for any departure from the the ordinary rule of evidence, applicable in the case of ordinary agents and private individuals, or of trustees, and we have been able to find no authority, which supports the defendants' position. *Hardee* v. *Dunn*, 13 La. An. 161 (19 U. S. Dig. 284, sec. 519) ; 2 Green. Ev. 587 ; *Cator* v. *Stokes*, 1 M. & S. 599.

The opportunities of selectmen to misappropriate the public money, are greater than in cases of dealings between individuals. From the variety of objects of proper expenditure by selectmen, it is more difficult to trace and check their wrong-doings. And because they are the sole chief business agents, of the many-headed public, it is much less easy to examine their accounts, and to hold them in check, than in the case of private persons. All these are reasons, why the value of evidence should not be relaxed in their favor. On the other hand, it is not more than ordinarily difficult for them to account. Their transactions being all public in their nature, their payments may be vouched and proved with more than ordinary ease.

II. The next objection seems to be, that the certificates of the town auditors, and the vote of the town to accept the selectmen's accounts. are an answer to this action. (1) We apprehend, that these proceedings are not even *prima facie* a defence.

The auditors are merely a committee, having no particular duty or responsibility imposed on them by statute ; and they act merely for the information of the town. The vote to accept the accounts, is equivalent to the ordinary vote to accept the report of a committee ; and it has no legal effect to discharge them from responsibility. The doctrine of an account stated, is limited to transactions between merchants, and cannot apply to cases of this nature. Moreover, the largest items of the account, are, as is below shown, upon their face illegal and inadmissible, and any action of the town approving such an account, must be null. (2) *A fortiori*, the action of the auditors, and of the town, cannot be held to be conclusive. Settlements of accounts between individuals, always suppose the exceptions of errors, and are binding, only so far as, each particular was examined and understood by the parties. Errors may at any future time be corrected, and concealments even beyond the bar of the statute of limitations. In the case of a municipal corporation, there is the additional reason, that the act of a careless or wicked majority, might otherwise cause serious injustice to the minority. *March* v. *Eastern Railroad Company*, 40 N. H. 549.

Suppose the case of selectmen, who have given the vote of the town secretly, and omit to credit it in their accounts ; or of selectmen who, fraudulently, alter figures, and misstate balances ; and the wrong is not discovered, until their account has been accepted and approved.

III. An examination of the particular accounts disclosed in this case, will illustrate strongly the propriety of the plaintiff's claim, that defendants shall account in this suit, for the moneys they have received.

(1) They have never rendered any detailed account, nor made any statement, by which the voters could judge of the fact of the expenditures alleged, nor of the propriety thereof:

"Sixteen recruits to fill town quota (including brokerage,) $12,759
Substitutes for five men drafted May 17, 1864,                2,500"

There is nothing to show who were the recruits, and substitutes, what was paid to each, or when; and in fact (though it does not appear in the case) no voucher nor memorandum in relation to these large sums, was left on file, by the defendants, or is now in possession of the town.

(2) The expenditure above indicated, is evidently illegal, and such as the town could not by any vote justify. The first item, indicates an average payment of $797.45 to, or for, each recruit; and the second, an average of $500 to each substitute. But the statute authorized only $300, to be expended for such a purpose, and made it penal for selectmen to offer or pay more: See Act July 16, 1864, ch. 2868, sec. 6; Laws p. 2823.

(3) The vote to assume the town debt, cannot be construed into an approval of the items cited above; because it does not appear what the "town debt" was, nor that any part of it is represented in these items; and these expenditures being illegal, could not have become part of the town debt.

(4) the act of the selectmen, in presenting the items of war expenditures to the commissioners appointed under the *act of July 1*, 1865; *Laws ch*. 4069 *p*. 3115, cannot be taken as an estoppel upon the plaintiff in this action, (1) because the town never authorized the selectmen of 1866, to do so, and (2) it is the fault of the defendants, that nothing else was left to their successors to present, and (3) the presentation of these items to the commissioners, does not tend to show, that the defendants had actually paid this money,— it may still be due by the town.

*J. J. & C. U. Bell*, for defendants.

I. The burden of proof was upon the plaintiff, to show that the money received by the defendants, was not accounted for.

1. It is always presumed that an officer has performed his duty; *Shackford* v. *Newington*, 46 N. H. 420, and cases cited. Merely showing, that he has received money which is one part of his duty, cannot raise any presumption that he has failed in the other part, the properly accounting for it.

2. In the case of public officers like selectmen, there is especial reason for holding that the burden of proof is upon the town, to show that they had not accounted. For the vouchers, books and all other records of their acts in the expenditure of public money, are the property of the town, and pass out of the hands of the selectmen at the close of their term and into the possession of those who are, it may be, interested in holding them liable for moneys already once

accounted for.  In this case, these defendants had been long out of office; when this suit was commenced, all the vouchers and books were in the hands of the town or had been destroyed through no fault of theirs; it would seem therefore, just, that the plaintiff, instead of requiring the defendants to go through the whole of their accounts for two years, and show how all the money had been expended, should point out the particulars, wherein they had failed to account for the money in their hands.  In the case of private individuals, agents, trustees and the like, the vouchers and books are the property and within the control of the party, and it is therefore reasonable that he, having the evidence, should account for the money once shown in his hands; but the case is entirely different, where a public officer has turned over all evidences of his acts, to the very persons who call upon him to account.

II.  The defendants have fully accounted for the moneys shown to be in their hands, and after examination, the plaintiff town has accepted and ratified that account.  The case finds, that the defendants presented to the town a printed report of their receipts and expenditures up to March 7, 1865, to which was appended the certificate of the auditors, that they had examined the accounts and found them " well vouched and correctly cast."  They also presented a written report of their accounts from March 7, to April 22, 1865, to which the same certificate of the auditors was appended.  It is true, that auditors are but a committee of the town, and are charged with no special duties by statute; but we do not see how that effects their acts.  It is practically impossible for the voters of the town to examine the vouchers or accounts of the selectmen.  The town therefore, acts in the only practicable way, and by their committee or auditors examine the vouchers and computations and find them correct; and after hearing and examining such reports, the town vote to accept the selectmen's accounts and to assume the town debt as it stands.  Though not technically an account stated, it is a settlement of accounts between the parties, intelligently agreed to by the parties, and binding and conclusive upon both.  It is true such a settlement supposes an exception of errors, but it is incumbent upon the party impugning the settlement, to point out the errors, if any, upon which he relies.  *Hayward* v. *Pilgrim Society*, 21 Pick. 275.

The supposed cases in the plaintiff's brief, of " careless or wicked majorities," " of selectmen having secretly given the note of the town," or " fraudulently altered figures," or " misstated balances," &c., are wholly gratuitous and without any, even the slightest, application to this case.  It is said in the plaintiff's brief, that " in fact, (though it does not appear in the case) no vouchers or memorandum in relation to large sums was left on file by the defendants. or is now in the possession of the town."  They might also have truly stated (though it does not appear in the case), that those vouchers were destroyed during the disturbance of the town-meeting of March, 1865, and that too, by the same parties, who are now attempting to hold these defendants to twice pay over these same large sums.

III.   The only sums paid by the selectmen which the case specially finds, although large, were properly and legally paid; they are,

"For 16 recruits to fill town quota, including brokerage, $12,759
For substitutes for 5 men drafted, May 17, 1864,          2,500"

By the act of 1862, ch. 2580, sec. 3, towns were authorized to "raise money and appropriate the same to encourage voluntary enlistments." It has been in *Crowell* v. *Hopkinton*, 45 N. H. 9; *Shackford* v. *Newington*, 46 N. H. 420, that this authorized towns to offer bounties for future enlistments, and no limit is fixed to the amount.   The town, June 13, 1864, authorized the selectmen " to procure volunteers for all quotas," &c., " in season to avoid a draft and at as low a rate as possible." True, by the act of July 16, 1864, towns were prohibited from paying more than three hundred dollars in bounties, and paying more was made penal, but that was subsequent to this expenditure by the selectmen; at least the time when the payments were made, not appearing by the case, it must be presumed that they were made when they could legally be made, and not when both parties in this case might have been liable to a penalty. By the act of July 10, 1863, ch. 2713, towns were authorized to pay bounties to drafted men and their substitutes, not exceeding $300 to each man.   This by necessary implication, authorized them to pay the other necessary expenses of procuring such substitutes. It is notorious, that those expenses were often necessarily large.   The case finds that the defendants paid for five such substitutes, $2,500. How much of this was for bounties to the substitutes, and how much for the other necessary expenses, does not appear; but the auditors who had examined and approved the vouchers, must have been satisfied that no more was paid as bounties, than the law allowed, and the state commissioners, must also have been satisfied of the same fact, as they allowed the claim.   To which may be added the presumption, that public officers did their duty and did not pay more than they legally could.   If it should be said, that the town had not authorized this payment for substitutes, yet they ratified it by the acceptance of the report of the selectmen in April, 1865, and are now bound by it.   *Hayward* v. *Pilgrim Society*, 21 Pick. 275.   This report had been in the hands of many of the voters, more than a month before it was accepted, so there was no hasty action on it. If it should be held, that these payments were not authorized by law, it would seem to be a proper case for the application of the maxim, " *quod fieri non debet, factum valet,*" although the town might not have been permitted to make the payment, yet as the town has received the benefit of it and the act is already done, there would seem to be no reason why the town should now recover the amount of its officers.

IV.   The action is misconceived.   (1.)   The only ground pretended for holding the defendants liable, being, that they appropriated the town funds to procuring volunteers and substitutes without authority of law; the proper remedy in such case would have been

a special action on the case, and not assumpsit for money had and received. In point of fact it is not pretended, that the defendants have any money in their hands belonging to the town, which in equity and good conscience they ought to refund to the town; but that they have improperly paid it away. (2). It is the case of money given to an agent for an illegal transaction, where the agent has paid it over, in which case it is held that assumpsit will not lie. Salkeld 22; *Smith* v. *Bromley*, Douglas 696.

BELLOWS, C. J. If the selectmen, assuming to act as agents of the town, paid its money to obtain recruits to be counted on the quota of the town, and the town assented to such payment, and took the benefit of it, it cannot recover back the money so paid of the recruits, even although the amount exceeded the amount the town was by law authorized to pay, and although the payment of such excess, was prohibited under a penalty, by postive law.

In respect to the part paid before the imposition of the penalty, that could not be recover back, because it was paid voluntarily and without any mistake of fact, and it is not against conscience for the recruit to retain it—and the town would have the benefit of the consideration, for which the money was paid.

In respect to the portion paid after such payment was prohibited by a penalty, the town must be regarded as in *pari delicto*; and this is an additional objection to such a recovery.

A payment by the agents of the town with its assent, is a payment by the town, and the contract having been fully executed, the courts will not lend their aid to the recovery of the money, so paid in violation of law. *Welsh* v. *Cutler*, 44 N. H. 561; and cases cited, but leave the parties where they find them. See 2, Smith's Lead. Ca. 457; Notes to *Merryweather* v. *Nixon*, and cases cited: Broome's Legal Maxims, 371.

The question then is, was this money paid over to the recruits, with the assent of the town. On this point the first enquiry, is as to the vote of the town of June 13th, 1864.

That vote in terms, authorized the selectmen to procure volunteers, for all quotas of this town hereafter to be made in season to avoid a draft, and at as low a rate, as possible up to the second Tuesday of March next.

At this time, the law of July 9, 1862, ch. 2580 was in force, and by section 3, the several towns and cities were empowered to raise and appropriate money to encourage voluntary enlistments in the war. This it will be perceived, applies to voluntary enlistments alone, and there is no limitation as to the amount. By law of July 10, 1863, towns and cities are authorized to raise and appropriate money as bounty to members of the enrolled militia of the state from their respective towns and cities, who may be drafted into the army, or to the substitutes of such conscripts, with the provision that the bounty shall not exceed $300 to such conscript or substitute.

By law of July 16, 1864, ch. 2868, section 4, cities and towns are

authorized to pay a bounty to each soldier mustered into the service of the United States, to fill the quota of such town or city, whether he voluntarily enlisted, or volunteered as a substitute for a drafted or enrolled man, not exceeding in amount $300 for a three years man; and may also pay a bounty not exceeding $200 to each drafted man. Section sixth, imposes a penalty upon any city, town, place or agent who shall pay a greater sum, than is authorized by the act.

When this vote of June 13, 1864, was passed, there was no limitation upon the authority to pay bounties to volunteers; and the vote applied to volunteers alone. At the time the vote was passed, then, the selectmen were only limited by the duty to obtain volunteers, at as low a rate as possible. For such volunteers as were obtained and paid before July 16, 1864, when all former provisions on the subject were repealed, the selectmen were authorized to pay the sums charged if they could not obtain the recruits for less. This law of July 16, 1864, imposed a penalty for paying more than $300 bounty, and after that, the selectmen could not legally pay more, nor could they rightfully regard the vote as an authority, or request to pay more. As to the amounts paid for substitutes for five drafted men, those came within the provisions of the law of July 10, 1863, which is confined to drafted or conscripted men, or substitutes of such. As to those, also, the vote cannot be regarded as authorizing, or requesting the selectmen, to pay more than the amounts fixed by the law.

It becomes necessary, then, to consider the question of ratification. The enquiry then is, as to the effect of the subsequent votes of the town, upon the subject of these payments.

It appears that the account of these payments, was presented to the town, approved by auditors, appointed for that purpose, and accepted by a formal vote of the town. Under an article in the warrant, to see what action the town will take in relation to the debts contracted by the selectmen for the purpose of procuring recruits, to fill the quota of the town, it was voted, to assume the debt as it now stands.

In addition to this, the selectmen for 1866–7 presented to the Commissioners appointed to ascertain the expenditures of the several towns for war purposes, the items of the defendants' accounts which were allowed, except some trifling amounts. These votes and acts, I think must be regarded as a ratification of the authority assumed by the selectmen, to make these payments; so that those payments, must be held to have been made with the assent of the town.

The selectmen in these acts, assumed to be the agents of the town, paid out its money in this way, and with the full knowledge of what was done, the town ratified these acts, and allowed the accounts of the selectmen for the money so paid. This subsequent ratification, is upon well established principles, equivalent to an antecedent request. *Low* v. *C. & P. Rivers R. R.*, 45 N. H. 378, and cases cited.

In this point of view, the recruit must be regarded, as having receceived the money so paid him, with the assent of the town, and as

the contract was fully executed, the town could maintain no action against the recruit, to recover back the money. Again, the money was paid to obtain recruits, to be counted on the quota of the town. If illegally paid by the selectmen, and without the request of the town or by its assent, then it would seem clear, that when it was brought to its notice, the town might repudiate the contract, reject its bene-fits, and recover of the recruit the amount so illegally paid.

But if instead of that, it retained the benefits of the contract, having notice of the way payment was made, the town must be deemed to have adopted the payments, by which the benefits were gained, upon the principle that having chosen to accept the benefits of a contract made by one assuming to act as its agent, it must take the burdens at the same time. As, when one without authority, buys goods for another, who afterwards accepts them, this acceptance is equivalent to an antecedent request, and the party will be bound to pay the price. 1 Williams' Saunders, 264, n. 1; *Keyser* v. *School District*, 35 N. H. 477; *Low* v. *Railroad*, before cited. In that case, services were rendered before the corporation was organized; but after the organization it accepted the benefits arising from those services, with notice that the services were so rendered upon the un-derstanding with the grantees of the charter, that they were to be paid for; and it was held, that such acceptance was equivalent to an antecedent request; even, although the corporation, at that time, had no capacity to make such request.

These views, lead us to the conclusion, that these contracts, were made with the recruits and the money paid to them, with the assent of the town, and as the contracts were fully executed, the money cannot be recovered back from the recruits by the town, upon the ground that the town had no legal right to pay so much—unless it can be shown, that these municipal corporations do not, in this re-spect, stand like individuals; and such a position clearly cannot be sustained.

It is very well settled in New Hampshire, that the courts will not enforce against a town an executory contract, which the town has by law no power to make. *Wadsworth* v. *Henniker*, 35 N. H. 189; *Gove* v. *Epping*, 41 N. H. 539.

So equity will restrain the collection of a tax voted by the town without authority, or for an illegal purpose, upon the application of a tax-payer who has not assented to such tax. *Brown* v. *Marsh*, 21 N. H. 81; and will restrain the payment of the money, when collected for such illegal or unauthorized purpose. *Merrill* v. *Plainfield*, 45 N. H. 126. *Gates* v. *Hancock*, 45 N. H. 528, was a bill in equity to compel the selectmen to pay into the treasury of the town, a sum of money applied by them to pay the expenses of defending themselves against an indictment for some mis-conduct in making up the check-list, the town having voted to al-low them to do so. A demurrer to such a bill was over-ruled. In this case, the plaintiffs were tax-payers, and it was alleged, that they never assented to this vote, and that the vote was procured by the fraud of the defendants, and a majority of the voters combining.

It will be perceived, that these cases do not touch the question raised here. In all the cases but *Gates* v. *Hancock*, the contracts remained executory, and the attempts were either to enforce them, or to prevent their being executed.

In *Gates* v. *Hancock*, the bill was brought by tax-payers, who alleged that they never assented to the acts complained of.

Those decisions do not reach the general question raised in this case, and that is whether a town can recover back money which it has voluntarily paid upon a contract which it was not authorized to make, or which was prohibited by law, payment having been made without mistake, or fraud, and the town having received a valuable consideration for it.

In the case of an individual, it is very clear, that an action would not lie in such case, unless where the particular contract is prohibited, in order to protect one class of men from another class, as in the case of usury, and the like, or where the money is extorted, by any undue advantage taken of a party's situation, contrary to laws made for the protection of persons under those circumstances. See Smith's Lead Cases, 2 vol. 395.

So far as regards the cases, where there was merely the absence of power to make such contracts, and the payments were purely voluntary and without fraud or mistake of fact, they cannot be recalled. Where the contracts were prohibited under a penalty, the town was very clearly *in pari delicto*, and so *melior conditio possedentis*.

If upon any view of the case, the town could be entitled to recall the money paid, it would be contrary to the plainest principles of justice as well as the settled rules of law, to allow it to be done without restoring the consideration.

If, then, by the action of the town, the recruit is entitled to hold the money so paid it is not easy to discover any principle of law that can enable the town to recover the money of the selectmen. The money was paid by the selectmen assuming to act as the agents of the town, and for the benefit of the town alone. The town has assented to it, and made it the money of the recruits; and it is difficult to see how it can at the same time, be regarded as money of the town in the hands of its agents. Even if the payment was illegal, the town by its assent, has parted with its property in the money, and it would be monstrous to compel the agents to pay the amount out of their own pockets, when the amount was expended by them for the sole benefit of the town and with its assent.

Again, the selectmen, presented their accounts to the town, claiming the amounts so paid. The town by a solemn vote allowed the accounts. This was substantially a payment of the amount, by the application of money in the hands of the selectmen, and is the same substantially, as if the town had actually paid over the money at that time.

So it has much the character of an account stated, that is, an account presented, examined and approved by auditors and deliberately agreed to by the town. See 2 Greenl. Ev. sec. 126; *Morse* v. *Allen*, 44 N. H. 33.

In *Bramston* v. *Robins*, 4 Bingh. 11, a tenant in paying his rent, had claimed the allowance of land-tax paid by him, and the landlord for many years, had credited it in his receipts, though the amount was greater than the landlord was liable to pay ; yet as the landlord, had knowledge, or the means of knowledge of all the facts, it was held, that he could not distrain for the amount erroneously allowed, the court holding it to be an established principle, that if money be given or paid with a full knowledge of all circumstances at the time of payment, it cannot be recovered by the payer, holding that a settlement in account, is the same thing as payment, citing *Skyring* v, *Greenwood & a.*, 4 B. & C. 281, which is similar.  So in 2, Smith's Leading Cases 457, it is said, that the statement of an account in which the money due by the terms of the illegal contract, is allowed, seems for this purpose equivalent to payment of it, citing *Owens* v. *Denton*, 1 C. Mees and Rosc. 712 ; 5 Tyrwh. 359.

The raising of money and paying of bounties, comes within the general power of the towns.  The mode of exercising it is regulated by statute.  It can incur the penalty affixed to the offence of paying more than the amount prescribed by law for bounties, just the same as an agent, and if it actually executes such a contract and pays over the money, and in that way obtains a recruit to be counted on its quota, I can see no reason why the town as such, should have the right to recall the money any more than a natural person, or any other corporation.

The statute, evidently contemplates the town, as having the power to act as an individual, and if it does so act, there is no reason why it should not be bound by the ordinary rules, that govern individuals. Towns are subject to the same implications from their corporate acts, or the acts of their agents within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons, 2 Kent, Com. 290 ; *Glidden* v. *Unity*, 33 N. H. 577 ; *Baker* v. *Holderness*, 44 N. H. 417.  The imposition of the penalty upon the town, necessarily implies, that the town can do the acts, which incur it.  Of course it can only act through its agents, and it must be entirely immaterial, whether, it gives its agent previous authority to pay the illegal sum, or subsequently ratifies the assumed authority, and pays the money to such agent.

In both cases, upon well established principles, it is equally the act of the town.  The substance of this case, as it stands before us, is that the town has paid to the defendants, the money illegally paid to the recruits, and so far as the right to recall it is concerned, it stands as if the money had been placed in the hands of the selectmen, with directions to pay it for this illegal purpose, for the benefit of the town alone, and they had done so.

Upon every sound principle of law and morals, the town in such a case is in *pari delicto*, and cannot recover back the money, which by its own acts has become the money of the recruits, and which they are entitled to retain.

It is like the case of money deposited with a stake-holder, on an

illegal wager, and paid over to the winner with the consent of the loser. In such case, it is clear it cannot be recovered back. *Howson* v. *Hancock*, 8, T. R. 575.

*Case discharged.*